ALTO, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 9—April 3, 1934.*

*J. E. O'Brien* of Fond du Lac, for the plaintiff in error.

The *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *R. W. Peterson,* district attorney of Green Lake county, for the defendant in error.

WICKHEM, J.   The first contention of defendant is that there was not sufficient competent evidence to warrant his conviction.   This requires a consideration of the facts.

July 3, 1933, John Davidson, a truck farmer, residing in the city of Berlin, Wisconsin, was assaulted in his barn

by Roy Turner and Ed. Zabralski. Both assailants were armed with guns, and the purpose of the assault was robbery. Turner conducted a saloon at Fond du Lac. Zabralski was a transient, who became acquainted with Turner at the latter's saloon. Two other men, Norton and one "Pete," who also came to Turner's saloon, conspired with Zabralski and Turner to commit this robbery. None of these parties were acquainted with Davidson or familiar with his circumstances, but one of the four knew Harry Erdmann, an employee of the defendant, and stated that Erdmann could tell all about Davidson and the prospects of a profitable robbery. The parties went to Berlin to look up Erdmann, and found him working for defendant. On July 1st the parties located Erdmann, inquired about Davidson, his money and his safe, and drove out to Davidson's place to look over the premises and to perfect their plan of robbery. There is testimony that at this time defendant talked with them, told them they could park their car on his premises, and informed them that Davidson had $15,000 or $20,000 at his home. One of the witnesses also testified that Alto admonished them not to hurt the old man if they went out to rob him. There is evidence also that defendant was to have a share in the proceeds of the robbery. There is ample evidence from which a jury could conclude that Alto counseled and advised with the conspirators, assisted them in formulating plans, arranged meetings of the conspirators in a building owned by him, discussed the division of the proceeds, and was to share in it.

There is no merit to the contention that this evidence does not sustain the conviction. It is true it is countered by flat denials on the part of Alto covering every detail of the testimony, and that there is evidence tending to establish an alibi. This presents a conflict, which the jury has resolved against defendant, and this court cannot disturb the jury's conclusion that Alto committed the acts alleged to

constitute the crime. The assignment, however, is broad enough to include, and does include, the claim that the verdict does not sustain the judgment and sentence. This is based upon certain contentions with respect to the information.

The information charges that defendant, on July 1, 1933, counseled, hired, and procured Turner and Zabralski to make an assault to rob upon Davidson; that Turner and Zabralski, on July 3d, *being armed with dangerous weapons,* wilfully made such an assault upon Davidson, "pursuant to and in furtherance of said counseling, hiring, and procuring." Defendant contends that the crime charged by the information against defendant was the hiring and procuring of two others to commit an assault upon and rob Davidson; that the second part of the information merely recites the carrying out of the plan, gratuitously adding the phrase, "being armed with dangerous weapons." The information, fairly construed, does not sustain this contention. The information adequately charges, and was plainly intended to charge, defendant with being an accessory before the fact to the crime of assault to rob, being armed with dangerous weapons. It charges this by alleging the hiring, procuring, and counseling by defendant of two others to rob, and that, acting upon this counseling and hiring, the two did commit a robbery, being armed with dangerous weapons. In *Reg. v. Bernard,* 1 Fost. & F. 240, Lord CAMPBELL, C. J., said:

"If A. advised B. to rob C., and in robbing him B. kills him, either upon resistance made, or to conceal the fact; or if A. solicit B. to burn the house of C., and B. does it accordingly, and the flames taking hold of the house of D., that likewise is burnt; in these cases A. is accessory to B., both in the murder of C. and in the burning of the house of D.; the events, though possibly falling out beyond his original intention, were, in the ordinary course of things, the probable consequences of what B. did under the influence and at the instigation of A. The approved test is, Was the

event alleged to be the crime to which the accused is charged to be accessory a probable consequence of the act which he counseled?"

Thus, taking the information in the most favorable light to defendant, it charges him with being accessory to the crime of assault to rob, being armed with dangerous weapons. There can be no serious question as to the crime of which the jury intended to and did find defendant guilty, when it is further considered that the trial court instructed the jury that to convict defendant it was necessary for them to be satisfied from the evidence that Turner and Zabralski made an assault on July 3d, with intent to rob, being armed with dangerous weapons, in furtherance of plans made on July 1st.

The next assignment of error is that defendant's coconspirators, while at Fond du Lac and before seeing or knowing defendant, conceived and discussed the plans for committing the robbery, and that they were permitted to testify to all of their conversations and plans made at Fond du Lac, at the Davidson place, and elsewhere, when defendant was not present. We find it unnecessary to consider this assignment of error for the reason that the record discloses that this testimony all came in over the objection of the prosecuting attorney, upon cross-examination of the coconspirators by defendant's counsel. Under these circumstances it cannot be held to be prejudicial error, and no further examination into the merits of the contention will be made.

The next assignment of error is based upon the fact that the defendant was forced to trial some seventeen days after the crime was committed, and the case tried in an atmosphere that made a fair trial impossible. This court cannot say as a matter of law that the trial court abused its discretion in setting the trial when it did. So far as the opportunity to prepare for trial is concerned, there is nothing in the record to warrant disturbing the trial court's conclusion that

the case did not require extensive preparation. Nor do we find grounds for the conclusion that defendant was prejudiced by being allowed inadequate time to prepare his defense. The intimation that the whole community was in a state of indignation and excitement; that there was danger of mob violence, and that the defendant could not have had a fair trial under those circumstances, is not sustained by the record. This court perhaps can take notice of the fact that such a crime might create feeling in the community, but in the absence of any specific showing, we cannot conclude as a matter of law that a fair trial could not be had, when the trial court obviously was of a different opinion.

In *Krueger v. State,* 171 Wis. 566, 177 N. W. 917, it was said:

"Just as the trial judge is in a better position to weigh the testimony of witnesses who appear before him, so is he in a better position to judge of the public sentiment of the county. He is on the ground and in a position to sense, in a way that this court cannot, the true sentiment of the community and to judge much more correctly whether it is such as to prevent a fair trial on the part of the defendants."

In the present state of the record, and in the light of this opinion, we find no prejudicial error.

The next contention is that the district attorney was guilty of suppressing evidence. Harry Erdmann testified upon the trial to defendant's guilty part in the robbery. On cross-examination he admitted that he had theretofore made a statement to the district attorney and that this statement completely exonerated defendant. He stated that the district attorney took this paper away with him. Counsel for defendant then demanded of the district attorney production of this paper. The district attorney declined to produce the writing, although he concededly had it. The refusal to produce was sustained by the court. The refusal of the district attorney to produce the paper was not warranted,

and evidently resulted from a misunderstanding as to his duty in the premises. However, this error was not prejudicial. The paper was important only in so far as it tended to corroborate Erdmann's self-impeachment. Since he admitted having made the statements, it is clear that the paper in the district attorney's possession would add nothing to the evidence, and that its suppression did not prejudice the defendant in any way.

It is further assigned as error that the district attorney asked the defendant the following questions:

"Do you know that your saloon building was under constant watch by the prohibition agents?

"Did you always see that the place was run in a law-abiding manner?"

The questions were improper. However, the court promptly sustained objections to them, and immediately warned the jury to entirely disregard the questions in the consideration of the case. Since it was already properly in evidence that defendant had been convicted of a crime involving violation of the prohibition law, it is to be doubted whether these questions could have operated to his prejudice. In any event this court, in reviewing the record, cannot say that the prejudicial character of the questions affirmatively appears. These considerations, taken in connection with the fact that objections were sustained to the questions and the jury promptly and explicitly admonished to disregard them, renders the contention that prejudicial error was committed untenable.

Numerous other errors have been assigned, but we feel that no useful service will be performed by a detailed discussion of them. They have been carefully examined and we find no error.

*By the Court.*—Judgment affirmed.